IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DAVONNE HOWARD,  CV. 05-852-KI

    Petitioner,  OPINION AND ORDER

  v.

CHARLES DANIELS,

    Respondent.

Christine Stebbins Dahl
Assistant Federal Public Defender
101 S.W. Main Street, Suite 1700
Portland, Oregon 97204

    Attorney for Petitioner

Karin Immergut
United States Attorney
District of Oregon
Britannia I. Hobbs
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

    Attorneys for Respondent

KING, Judge

    Petitioner, an inmate at FCI Sheridan, brings this habeas corpus proceeding pursuant to 28 U.S.C. § 2241. A hearing was

1 -- OPINION AND ORDER

held in this matter on June 23, 2005. For the reasons set forth below, petitioner's habeas corpus petition is denied.

## **BACKGROUND**

In June, 2001, petitioner was convicted of felon in possession of a firearm, possession with intent to distribute a controlled substance, and possession of a firearm with an obliterated serial number. Petitioner was sentenced to 72 months confinement.

On January 4, 2005, petitioner was transferred from FCI Sheridan to Clackamas County Correctional Center to serve the last 10% of his sentence. At that time, his projected release date was June 30, 2005. Petitioner later was transferred to home confinement. In April, 2005, Officer Charlotte Krebs orally gave petitioner permission to purchase over-the-counter allergy medication. Petitioner testified that he was taking Nyquil, Sudafed, and Hydroxycut.

On April 5, 2005, petitioner submitted a random urine sample. On April 8, 2005, the urine was tested by Legacy Diagnostic Services' MetroLab resulting in a "positive" result for Amphetamine. (Pet.'s Exh. A at 7.) Petitioner immediately was notified of the results, taken into custody, and charged with use of a narcotic. (Pet.'s Exh. A at 10.)

I.  **Community Corrections Disciplinary Review**.

On April 8th, Community Corrections Officer Barry Jarrett provided petitioner with notice that he was being charged with using a narcotic. (Pet.'s Exh. A at 11.) The Notice of Hearing advised petitioner of the charge against him and that a Center Disciplinary Committee (CDC) hearing would be held on April 11, 2005. On that form, petitioner indicated that he would like Charlotte Krebs as a staff representative. Petitioner also received an Inmates Rights Form advising him that he had the right to call witnesses, present documentary evidence, and have a member of the staff "who is reasonably available" to represent him. (Pet.'s Exh. A at 9.)

On April 11, 2005, Community Placement Counselor Greg Patton conducted a hearing at the jail with petitioner. Patton is the Chairperson of the CDC and was the only member present. A CDC Report was generated indicating that the following occurred during the course of the hearing:

> 1. Petitioner requested to be represented by a staff representative, the representative was unavailable and petitioner agreed to proceed without representation.
>
> 2. Petitioner did not request witnesses.
>
> 3. Petitioner stated that maybe he was taking too much Sudafed for his allergies. Petitioner

3 -- OPINION AND ORDER

indicated he was taking up to one box a day, depending on the severity of his allergies.

4. The incident report, investigation, and the statement of a lab technician from Legacy Health Systems that positive results could not have been produced by use of over-the-counter medications, were considered by the CDC in reaching its decision.

5. Petitioner was advised of the CDC's findings and the right to appeal. Petitioner received a copy of the report.

Although the CDC report indicates that petitioner waived his right to a staff representative, Patton testified that he made no attempt to determine if Ms. Krebs was available to represent petitioner. Patton assumed that petitioner waived his right to staff representation because after being advised of his rights, petitioner made a statement. At the conclusion of the hearing, Patton held that petitioner committed the prohibited act and "refer[red] to the DHO for disposition", i.e., he did not determine the appropriate sanction. (Pet.'s Exh. A at 3-4.) On April 14, 2005, petitioner was transferred to FDC Sheridan.

## II. **Bureau of Prisons Disciplinary Hearings Officer Review**.

On April 21, 2005, Michael Raitt, a Bureau of Prisons (BOP) Disciplinary Hearings Officer (DHO), reviewed the CDC report for compliance with due process requirements and imposed the sanction of forfeiture of 27 days good time credit

4 -- OPINION AND ORDER

and disciplinary transfer back to confinement.  (Pet.'s Exh. A at 2-4.)  The DHO did not conduct a *de novo* hearing.

A copy of the DHO decision was mailed to petitioner on April 28, 2005, and received by him on May 3, 2005. (Pet.'s Exh. A at 1.)  On May 5, 2005, petitioner submitted an administrative appeal (BP-10).  On May 13, 2005, the appeal was rejected by the Regional Office on the basis that petitioner "must wait for the [Community Corrections Manager's] decision of the CDC hearing before you may appeal." (Pet.'s Exh. D at 16.)  On June 13, 2005, petitioner resubmitted the BP-10 form.  The Regional Director accepted the appeal and a response is due July 13, 2005.[1]

## **DISCUSSION**

In his habeas corpus petition, petitioner alleges that the procedure followed by the CDC was deficient in the following particulars: (1) petitioner was transferred to jail before a disciplinary hearing was held; (2) petitioner was not provided paperwork advising him of the charges against him, his right to a hearing, and his right to appeal any

---

[1] At the hearing on petitioner's motion for a temporary restraining order, I ruled that exhaustion of administrative remedies would be waived in this case.  Hence, petitioner's claim that he was not afforded a timely opportunity to utilize his administrative remedies is moot.

disciplinary action; (3) petitioner was not provided a copy of the lab report prior to the CDC hearing; (4) petitioner did not have an opportunity to present witnesses or evidence in his defense; (5) petitioner was not afforded a reasonable opportunity to confront and cross-examine the lab technician; (6) petitioner was denied the assistance of a staff representative; and (7) the "interview" by Counselor Patton was not a constitutionally adequate hearing. Additionally, petitioner complains that the DHO did not comply with 28 C.F.R. § 541.17, and his decision is not supported by "some evidence". (Id. at 10-11.)

I.  **Procedural Due Process**.

A prison inmate must be afforded procedural protections before he can be deprived of a protected liberty interest in good-time credits. Wolff v. McDonnell, 418 U.S. 539, 558 (1974). However, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Id. at 556.

Due process requires (1) written notice of the charges; (2) the opportunity to call witnesses and present evidence if doing so would not unduly threaten institutional safety and goals; and (3) a statement of the evidence relied on by prison officials and reasons for the disciplinary action. Wolff, 418 U.S. at 563-71;

Zimmerlee v. Keeney, 831 F.2d 183, 186 (9th Cir. 1987), cert. denied, 487 U.S. 1207 (1988). An inmate has a right to be represented by staff or a competent inmate only if the inmate is illiterate or the complexity of the issue makes it unlikely that the inmate will be able to defend himself against the charges. Wolff, 418 U.S. at 570. Due process does not include the right to confrontation. Id. at 568; Zimmerlee, 831 F.2d at 187 n.2.

**Notice.** The documentary evidence presented by respondent demonstrates that two days before the CDC hearing, petitioner received a Notice of Hearing and an Inmates Rights Form. The forms advised petitioner of the charges, the date of the hearing, and his rights. The notice satisfied due process because it was sufficient to inform petitioner of the charges, and to enable him to marshal the facts and prepare a defense. Wolff, 418 U.S. at 564.

**Opportunity to Call Witnesses and Present Evidence.** Petitioner has failed to demonstrate that he requested the right to present witnesses or documentary evidence in his defense and that he was denied the same. Accordingly, he has failed to demonstrate that his due process rights were denied in this respect. Petitioner's contention that he was not provided a copy of the lab report prior to the CDC hearing does not give rise to a due process

violation in the absence of a contention that he sought to use the lab report in his defense and was denied the opportunity to do so.

**Statement of Evidence and Reason for Discipline**.  A copy of the CDC Report was mailed to petitioner on April 28, 2005.  (Pet.'s Exh. A.  The CDC Report lists the evidence relied upon and the reason for discipline.  This complied with due process.

In sum, I conclude that the notice and hearing provided by the CDC satisfied the procedural requirements of the Due Process Clause, as defined by the U.S. Supreme Court in Wolff.  Petitioner's contention that he was denied the opportunity to cross examine the lab technician does not give rise to a due process violation.  Wolff, 418 U.S. at 557; Zimmerlee, 831 F.2d at 187 n.2.

Similarly, the fact that petitioner was not provided staff representation does not rise give rise to a due process violation because there is no evidence that petitioner is illiterate or that the hearing was complex.  See Wolff, 418 U.S. at 570.  Although Patton failed to make a good faith effort to determine whether Ms. Krebs was available to represent petitioner at the CDC hearing, as is petitioner's right under the applicable BOP Program Statements and 28 C.F.R. § 541.17, such failure by itself does not give rise to a due process violation.  Walker v. Sumner, 14 F.3d 1415, 1420 (9th Cir. 1993) (so long as a disciplinary hearing comports with the requirements of Wolff, prison officials do not violate due process

by failing to follow internal prison procedures which rise above the floor set by the Due Process Clause).

I further conclude that *because* the CDC hearing satisfied due process, petitioner was not entitled to a *de novo* hearing before the DHO.  See Ramos v. Gilkey, 1997 WL 201566 *3 (N.D.Ill. 1997) (if CDC hearing comports with due process, the absence of a DHO hearing is constitutionally irrelevant); cf. Mazzanti v. Bogan, 866 F.Supp. 1029, 1033 (E.D. Mich. 1994) (petitioner who committed offense while confined in a community corrections center had no right under 28 C.F.R. § 541.17 to hearing before DHO).  In this regard, it is worthy of note that there has been no showing that Patton was biased or that the DHO's decision was arbitrary or capricious.

**II.  "Some Evidence".**

Findings that result in the loss of liberty satisfy due process if "some evidence" exists which supports the decision of the disciplinary board.  Superintendent v. Hill, 472 U.S. 445, 454-55 (1984); Bostic v. Carlson, 884 F.2d 1267, 1269-70 (9th Cir. 1989).  The standard "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence."  Hill, 472 U.S. at 455.  Rather, the relevant inquiry is "whether

there was any evidence in the record that could support the conclusion reached by the disciplinary board." Id. at 455-56.

The urinalysis results and the lab's representation that the positive results would not be caused by over-the-counter medication is "some evidence" which supports the CDC's decision. Moreover, the court notes that petitioner failed at the hearing to demonstrate that the urinalysis results were unreliable.

## **CONCLUSION**

Based on the foregoing, petitioner's habeas corpus petition (#1) is DENIED and this proceeding is DISMISSED.

IT IS SO ORDERED.

DATED this ___5th___ day of July, 2005.

                                       ___/s/ Garr M. King___
                                       Garr M. King
                                       United States District Judge